**UNITED STATES DISTRICT COURT FOR THE**
**DISTRICT OF PUERTO RICO**

| | |
|---|---|
| MARPOR CORPORATION,<br><br>    Plaintiff,<br><br>        v.<br><br>DFO, LLC AND DENNY'S, INC., ET AL.<br>    Defendants. | CIV. NO. 10-1312 (PG) |

**OPINION AND ORDER**

　　　Plaintiff MARPOR Corporation ("MARPOR" or "Plaintiff") filed a civil action in the Puerto Rico Court of First Instance against DFO, LLC and Denny's, Inc.("Defendants") on March 18, 2010. (Docket No. 6). Said action requested declaratory judgment as to MARPOR's exclusive right to operate and develop Denny's restaurants in Puerto Rico. (Docket No. 6).  MARPOR further requested a preliminary injunction and the return of MARPOR's exclusive right to operate and develop Denny's restaurants alleging that Defendants unjustifiably deprived MARPOR of its exclusivity.  On April 15, 2010, Defendants removed the instant case and voluntarily consented to the jurisdiction of the Court. (Docket No. 1).  Subsequently, Defendants filed a Motion to Dismiss on April 26, 2010. (Docket No. 11).  Before the Court are Defendants' Motion to Dismiss (Docket No. 11) pursuant to Fed. R. Civ. P. 12(b)(6) or alternatively 28 U.S.C. 1404(a) ("Section 1404(a)"), as well as Plaintiff's Opposition (Docket No. 15), Defendant's Response thereto (Docket No. 18), Plaintiff's Surreply (Docket No. 20), and Defendants' Informative Motion regarding recent caselaw (Docket No. 24).  For the reasons set forth below, the Court **GRANTS** Defendants' Motion to Dismiss.

## I. Factual Background

The Court draws the following facts from parties' motions and takes them as true for purposes of resolving Defendants' Motion to Dismiss.

Plaintiff is a local corporation organized under the laws of the Commonwealth of Puerto Rico that employs approximately 688 people in its Denny's restaurants. (Docket No. 6). MARPOR has had exclusive use of the Denny's franchise in the Puerto Rico territory since 2007. (Docket No. 6). Defendants are corporations organized under the state of Delaware and their main business offices are located in South Carolina. DFO, LLC and Denny's, Inc. are the principals of the Denny's restaurant franchise.

On July 11, 1995, Denny's, Inc. and DEN-CARIBBEAN, LLC ("DEN-CARIBBEAN") executed a contract for the exclusive operation and development of Denny's restaurants in the territory of Puerto Rico and the United States Virgin Islands. On November 2, 1999, Denny's, Inc. assigned the contract to DFO, LLC. The expiration date of the contract was July 11, 2005, but DFO, LLC and DEN-CARIBBEAN extended it by five years. On August 28, 2003 DEN-CARIBBEAN filed for bankruptcy and MARPOR subsequently acquired DEN-CARIBBEAN's rights at public auction. DFO, LLC and MARPOR executed an assignment agreement on March 8, 2007. In said agreement, MARPOR acquired all the rights and privileges under the original contract to develop and operate Denny's restaurants exclusively in Puerto Rico. It is of particular importance that the agreement between Denny's, Inc. and DEN-CARIBBEAN, LLC contained a forum selection clause that stated, "[a]ny litigation based hereon, or arising out of, under, or in connection with, this Agreement, or any course of conduct, course of dealing, statements (whether verbal or written) or actions of Licensor or Licensee shall be brought and maintained exclusively in the Courts of the State of South Carolina or in the United States District Court for the District of South Carolina..." (Docket No. 1, Exhibit 1). The agreement further states that the contract "shall be governed by and construed in accordance with the internal laws of the State of South Carolina (U.S.A.), without regard to such state's choice of law and conflict of law provisions." (Docket No. 1, Exhibit 1).

The parties agreed to a schedule, which outlined the timetable within which MARPOR had to open new Denny's restaurants in Puerto Rico.

CIV. NO. 10-1312 (PG)                                                    Page 3

As a result of the economic recession that deeply affected Puerto Rico and the United States mainland, Mr. Nelson Marchioli, president and CEO of Denny's, Inc., extended the period to open new Denny's restaurants and remodel existing ones. (Docket No. 1, Exhibit 6).  MARPOR subsequently requested a longer extension of time to open a new Denny's restaurant in Puerto Rico. (Docket No. 1, Exhibit 6).  On June 12, 2009, Denny's, Inc. informed MARPOR that it was withdrawing its exclusivity agreement because it seemed that MARPOR would be unable to comply with the calendar to open new restaurants in their contract. (Docket No. 1, Exhibit 8).  MARPOR proceeded to open a new Denny's restaurant in Los Paseos Mall in Rio Piedras, Puerto Rico (Docket No. 1, Exhibit 14-16), which it alleges satisfies the conditions outlined in its agreement with Defendants. Defendants replied via letter on February 3, 2010, in which they informed MARPOR of their intention to rescind MARPOR's exclusivity to develop Denny's restaurants in Puerto Rico. (Docket No. 1, Exhibit 18).

    Plaintiff brought suit against Defendants in the Court of First Instance of Puerto Rico on March 18, 2010.  Plaintiff alleged a violation of the Dealer's Contracts Act of June 24, 1964, No. 75 ("Law 75"). P.R. Laws Ann. tit. 10, §§ 278 et seq.[1] (Docket No. 6).  MARPOR further alleged a breach of contract claim against Defendants. In its lawsuit, MARPOR requested declaratory and injunctive relief against Defendants because MARPOR had been deprived of its exclusivity in operating and developing Denny's restaurants in Puerto Rico.

    Defendants removed to this Court on April 15, 2010, pursuant to diversity jurisdiction under 28 U.S.C. 1332. (Docket No. 1).  In their Notice of Removal, Defendants consented to the removal of this case and the jurisdiction of the Court. (Docket No. 1).  On April 26, 2010, Defendants submitted a Motion to Dismiss, requesting the dismissal of the case pursuant to the forum selection clause between the parties or in the alternative to transfer the case to the United States District Court of South Carolina pursuant to 28 U.S.C. 1404(a).  For the reasons that follow the Court **GRANTS** Defendants' Motion to Dismiss.

---

[1] Plaintiff also reserved the right to request and claim all admissible damages under Article 1930, § 1077 of the Civil Code. P.R. Laws Ann. tit. 31, § 3052.

CIV. NO. 10-1312 (PG) <span style="float:right">Page 4</span>

## II. DISCUSSION

### A. Rule 12(b)(6) Standard of Review

The standard of review applied to a motion to dismiss pursuant to Fed. R. Civ. P. Rule 12(b)(6) establishes that a complaint may not be dismissed "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief." D.I.P.R. Mfg. Inc. v. Perry Ellis Int.l, Inc., 472 F.Supp.2d 151, 153 (D.P.R. 2007). Moreover, "even under the liberal pleading standard of Federal Rule of Civil Procedure 8, the Supreme Court has...held that to survive a motion to dismiss, a complaint must allege a plausible entitlement to relief." Rodriguez-Ortiz v. Margo Caribe, Inc., 490 F.3d 92, 95 (1st Cir. 2007) (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 553 (2007)).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009)(citing Twombly, 550 U.S. at 556). That is, "[f]actual allegations must be enough to raise a right to relief above the speculative level . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact) . . . ." Twombly, 550 U.S. at 555 (internal citations and quotation marks omitted).

"[D]etermining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Iqbal, 129 S. Ct. at 1950. "Yet [the Court] need not accept as true legal conclusions from the complaint or naked assertions devoid of further factual enhancement." Maldonado v. Fontanes, 568 F.3d 263, 266 (1st Cir. 2009) (quoting Twombly, 550 U.S. at 557). Although a complaint attacked by a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) "does not need detailed factual allegations, . . . a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Twombly, 550 U.S. at 555 (internal citations and quotation marks omitted). Lastly, "[u]nder Rule

12(b)(6), the district court may properly consider only facts and documents that are part of or incorporated into the complaint; if matters outside the pleadings are considered, the motion must be decided under the more stringent standards applicable to a Rule 56 motion for summary judgment." <u>Trans-Spec Truck Serv., Inc. v. Caterpillar, Inc.</u>, 524 F.3d 315, 321 (1st Cir. 2008).

**B. Forum Selection Clauses**

Contracting parties often agree to adjudicate their disputes in a specific location. The utility of forum selection clauses in business contracting may not be understated as it increases convenience and predictability for business actors. The general rule is that forum selection clauses are *prima facie* valid. <u>M/S Bremen v. Zapata Off-Shore Co.</u>, 407 U.S. 1, 10 (1972). Forum selection clauses are enforced via a motion to dismiss under Fed. R. Civ. P. 12(b)(6) or a transfer petition pursuant to 28 U.S.C. 1404(a). 28 U.S.C. 1404(a); <u>Stewart Org., Inc. v. Ricoh Corp.</u>, 487 U.S. 22 (1988); Rivera v. Centro Medico de Turabo, Inc., 575 F.3d 10, 15 (1st Cir. 2009); Silva v. Encyclopedia Britannica, Inc., 239 F.3d 385, 387 (1st Cir. 2001); <u>Antilles Cement Corp. v. Aalborg Portland A/S</u>, 526 F. Supp. 2d 205, 207 (D.P.R. 2007). The type of motion that a party utilizes to enforce a forum selection clause is determinative of the standard that the Court will rely on when deciding upon the motion. <u>Outek Caribbean Dist. Inc. v. Echo, Inc.</u>, 206 F.Supp.2d 266 (D.P.R. 2002). In other words, if the motion is to dismiss, the Court will apply the <u>Bremen</u> criteria, but if the motion is to transfer pursuant to Section 1404(a) then the Court will apply the <u>Stewart</u> rationale. <u>Id.</u> In this case, Defendants have made both a motion to dismiss and alternatively request transfer pursuant to Section 1404(a).

*1. <u>Bremen</u> Standard*

In <u>Bremen</u>, the Supreme Court established the key tenet that forum selection clauses "are *prima facie* valid and should be enforced unless enforcement is shown by the resisting party to be unreasonable under the circumstances." Bremen, 407 U.S. at 10.

Forum selection clauses should be found unenforceable when: "(1)

the clause was the product of fraud or overreaching;(2) enforcement would be unreasonable and unjust; (3) proceedings in the contractual forum will be so gravely difficult and inconvenient that [the party challenging the clause] will for all practical purposes be deprived of his day in court; or (4) enforcement would contravene a strong public policy of the forum in which suit is brought, whether declared by statute or by judicial decision." Rafael Rodriguez Barril, Inc., v. Conbraco Indus., 619 F.3d 90, 93 (1st Cir. 2010)(citing Bremen, 407 U.S. at 15-18) (internal citations omitted). Additionally, it is the party resisting the forum selection clause who must demonstrate the unreasonableness of the clause. Bremen at 10.

The First Circuit has held that the heavy burden of proof required to refuse a forum selection clause, "demands more of a litigant, however, than simply showing that another location would be more convenient." In re Mercurio, Jr., 402 F.3d 62, 66 (1st Cir. 2005)(citing Carnival Cruise Lines, Inc. v. Shute, 499 U.S. 585, 595 (1991)). "Thus, something considerably more than the mere inconvenience of traveling to litigate in a different, even faraway foreign jurisdiction, is required to overcome a contractual agreement to do so." Id. at 66 (quoting Royal Bed & Spring Co. v. Famossul Industria e Comercio de Moveis Ltda, 906 F.2d 45, 49 (1st Cir. 1990)).

Moreover, the Bremen analysis requires consideration of whether the clause in dispute is mandatory or permissive. Rivera, 575 F.3d at 17. In the instant case, the forum selection clause is clearly mandatory as it states that any litigation "shall be brought and maintained in the Courts of the State of South Carolina or in the United States District Court for the District of South Carolina." (Docket No. 1, Exhibit 1). The Court finds that the mandatory term, shall, reinforces the idea that the forum selection clause should be enforced absent exceptional circumstances that would make it unjust or unreasonable to do so. Rivera, 575 F.3d at 17; Miro Gonzalez v. Avatar Realty, Inc., 177 F.Supp.2d 101, 104 (D.P.R. 2001).

In light of the applicable standard, the Court concludes that the forum selection clause should apply. There is no evidence on record that the clause in dispute was the result of fraud or overreaching. MARPOR does not dispute that they freely chose to adopt the contract

without contesting the forum selection clause. Therefore, the first factor to be considered is easily put aside.

The second and third factors in our analysis require that we determine whether enforcing the clause would be unjust or gravely inconvenient. The Court finds no suggestion on record that the clause was inserted in bad faith or any other indicia that would make the clause unjust. See Shute, 499 U.S. at 595. Nothing on the record suggests that South Carolina is excessively burdensome and deprives MARPOR of an effective forum. By agreeing to the forum selection clause in the agreement, MARPOR was on notice that it would be required to litigate and produce witnesses in South Carolina. Plaintiff argues that litigating in South Carolina will be gravely difficult because its non-party witnesses reside in Puerto Rico, the documentary evidence is located in Puerto Rico, and the case concerns the economic situation of Puerto Rico, a matter better suited for a forum in Puerto Rico. At this time, Defendants have not contested Plaintiff's economic argument, therefore it is unclear whether Plaintiff will be required to present witness testimony. If witness testimony were required, Plaintiff may depose witnesses in Puerto Rico and present their testimony in South Carolina. See Fed. R. Civ. P. 45. Any possible inconvenience to litigating in South Carolina was foreseeable to the parties when they negotiated the agreement and agreed to the forum selection clause. Miro Gonzalez, 177 F.Supp.2d at 105 (citations omitted). Thus, the Court finds no indication that litigating in South Carolina is excessively burdensome or so inappropriate that it deprives Plaintiff of an effective forum. As a result, the Court concludes that the second and third Bremen factors do not preclude enforceability.

The fourth factor in our analysis has to do with whether enforcing the clause would contravene the public policy of Puerto Rico. MARPOR argues that as a dealer[2] under Law 75 the forum selection

---

[2] In order to determine if Plaintiff qualifies for protection as a dealer under Law 75, the Court must consider whether or not MARPOR meets the statutory definition. Law 75 defines a dealer as a "person actually interested in a dealer's contract because of his having effectively in his charge in Puerto Rico the distribution, agency, concession or representation of a given merchandise or service." 10 P.R. Laws Ann. § 278(a). A dealer's contract is defined as a "relationship established between a dealer and a principal or grantor whereby and irrespectively of the manner in which the parties may call, characterize or execute such relationship, the former actually and effectively takes charge of the distribution of a merchandise, or of the rendering of a service, by concession or franchise,

clause may not be enforced. Law 75 states that "[a]ny stipulation that obligates a dealer to adjust, arbitrate or litigate any controversy that comes up regarding his dealer's contract outside of Puerto Rico, or under foreign law or rule of law, shall be likewise considered as violating the public policy set forth by this chapter and is therefore null and void." 10 P.R. Laws Ann. § 278b-2.

The Supreme Court of Puerto Rico has stated that Law 75 "unquestionably represents a strong public policy directed to level[ing] the contractual conditions between two groups financially unequal in their strength." Medina & Medina v. Country Pride Foods, Ltd., 858 F.2d 817, 820 (1st Cir. 1988). Law 75 was enacted with the purpose of "remedy[ing] the abusive practices of suppliers who arbitrarily eliminated distributors after they had invested in the business and had successfully established a market in Puerto Rico for the supplier's product or service." Re-Ace, Inc. v. Wheeled Coach Indus.,Inc., 363 F.3d 51, 57 (1st Cir. 2004)(quoting Triangle Trading Co., Inc. v. Robroy Indus., Inc., 200 F.3d 1, 2 (1st Cir. 1999)).

Despite the important public policy rubric of Law 75, the Supreme Court of Puerto Rico has adopted federal standards on forum selection clauses. Unisys Puerto Rico v. Ramallo, 128 D.P.R. 842 (1991). As a result, the First Circuit has held that "there is no conflict between federal common law and Puerto Rico law regarding the enforceability of forum selection clauses and, consequently, has declined to perform an Erie analysis when dealing with such clauses." D.I.P.R., 472 F.Supp.2d at 155 (citing Silva, 239 F.3d at 386 n. 1); Outek Caribbean Dist. Inc. v. Echo, Inc., 206 F.Supp.2d 263 (D.P.R. 2002); Stereo Gema, Inc. v. Magnadyne Corp., 941 F.Supp. 271, 272-75 (D.P.R. 1996). The Unisys

---

on the market of Puerto Rico." Id. § 278(b). The First Circuit has concluded that a dealership has the following characteristics: "promotion of the product, keeping an inventory, fixing prices, delivery and billing responsibilities, authority to extend credit, advertising campaigns, assumption of risk, purchasing the product, maintaining facilities, and offering product-related services to clients." Re-Ace, Inc. v. Wheeled Coach Indus.,Inc., 363 F.3d 51, 55-56 (1st Cir. 2004)(citing Triangle Trading Co., Inc. v. Robroy Indus., Inc., 200 F.3d 1, 4-5 (1st Cir. 1999)(applying the factors to be considered as outlined by the Supreme Court of Puerto Rico in Roberco, Inc. v. Oxford Indus., Inc., 22 P.R. Offic. Trans. 111, 1988 WL 580769 (1988)). It should be emphasized that the Supreme Court of Puerto Rico has noted that not all of the Roberco factors need to be met in order for a party to be considered a distributor, but rather the court must consider the factors in light of the evidence presented. Re-Ace, 363 F.3d at 56. In light of this definition, the Court concludes that MARPOR meets the definition of a dealer under Puerto Rico law because it is responsible for: keeping inventory, delivery and billing, assumption of risk, maintaining facilities, and offering product related services.

decision therefore eliminates any reservations that might exist as to whether or not transferring venue would violate Puerto Rico public policy or cause any Erie-type difficulties.[3]  Furthermore, an Erie analysis is precluded because both South Carolina, Minorplanet Sys. USA Ltd. v. Am. Aire, Inc., 628 S.E.2d 43 (S.C. 2006); Security Credit Leasing, Inc. v. Armaly, 339 S.C. 533, 529 S.E.2d 283 (Ct. App. 2000),[4] and Puerto Rico, Unisys, 128 D.P.R. 842, follow the Bremen standard.

Taking into account the relevant factors, the Court is unable to find any reason that would preclude dismissal pursuant to Defendants' 12(b)(6) motion.  The forum selection clause is not the product of fraud, meets reasonableness and convenience standards, and perhaps most importantly, enforcement of the clause is in accord with Puerto Rico's public policy.

Therefore, the Court finds dismissal of the claim to be appropriate.

*2. Section 1404(a) Standard*

The Plaintiff has vehemently argued that the Court need not address Defendants' 12(b)(6) motion, but rather that the motion should be appraised within the rubric of 28 U.S.C. 1404(a).  Plaintiff has avidly cited to Stewart, proposing that in diversity cases where a federal court may transfer to another federal court the appropriate analysis should be conducted according to Section 1404(a).  However, the law of our Circuit states that a Rule 12(b)(6) motion to dismiss in a diversity case should be considered under the Bremen approach. Rafael Rodriguez Barril, Inc., 619 F.3d at 92 .  The Court notes that in cases where the motion is one to transfer pursuant to Section 1404(a) then Stewart will control.  Outek, 206 F.Supp.2d at 266.  As a

---

[3] In Erie, the Supreme Court held that federal courts sitting in diversity jurisdiction must apply state substantive law, but may apply federal procedural rules. Erie R.R. Co. v. Tompkins, 304 U.S. 64 (1938).  The First Circuit has held that "there is no conflict between federal common law and Puerto Rico law regarding the enforceability of forum selection clauses" and, consequently, has declined to perform an Erie analysis when dealing with such clauses in a diversity context. Silva, 239 F.3d at 386 n. 1. "This approach is so firmly established that the District Court in Puerto Rico has consistently applied it throughout the last two decades, even when the case sets forth claims under Act 75." D.I.P.R., 472 F.Supp. 2d at 155; Lambert v. Kysar, 983 F.2d 1110, 1116-17 (1st Cir. 1993)("In cases where federal law and state law coincide on the issue in question, it is unnecessary for the court to make a full Erie analysis.").

[4] Armaly was partly overruled by Law Firm of Paul L. Erickson, P.A., v. Boykin, 651 S.E.2d 606 (S.C. 2007), but Armaly continues to apply in regard to forum selection clauses.

CIV. NO. 10-1312 (PG) Page 10

result, the Court finds that the <u>Bremen</u> standard applies to Defendants' 12(b)(6) Motion to Dismiss.[5]

In light of the foregoing, the Defendants' Motion to Dismiss is hereby **GRANTED**.

### IV. CONCLUSION

For the reasons stated above explaining why dismissal is appropriate, the Court **GRANTS** Defendants' Motion to Dismiss under Fed. R. Civ. P. 12(b)(6).  As such, Plaintiff's suit is **DISMISSED WITHOUT PREJUDICE**.

**IT IS SO ORDERED.**

In San Juan, Puerto Rico, December 2, 2010.

S/ JUAN M. PEREZ-GIMENEZ
JUAN M. PEREZ-GIMENEZ
U.S. DISTRICT JUDGE.

---

[5] The Court finds that Defendants' 12(b)(6) motion is sufficient to grant dismissal. As a result, the Court will not delve into an analysis on the merits of whether voluntary transfer pursuant to Section 1404(a) is appropriate.